The judgment of the United States Customs Court is *affirmed.*

United States *v.* Young (No. 2727)[1]

---

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Kenneth G. Osborn*, special attorneys, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument December 16, 1926, by Mr. Carter and Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The imported merchandise involved in this case consists of pieces of African cedar, about 7 inches long, 2 inches wide, and one-fourth of an inch thick. They were classified and assessed by the collector under paragraph 403 of the Tariff Act of 1922.

Importer protested, claiming free entry under paragraph 1700 of the act.

The Board of General Appraisers, now the United States Customs Court, sustained the protest. The Government appealed.

Paragraph 403 provides for certain named woods (which do not include the merchandise here) in the log, at one rate; in all other forms not further manufactured than sawed, at a higher rate; and finally for "veneers of wood and wood unmanufactured, not specially provided for," at a rate still higher.

Paragraph 1700 allows free entry to wood; logs, timber of various kinds, pulp woods, firewood, certain blocks and bolts and for—

sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved; clapboards, laths, ship timber; all of the foregoing not specially provided for.

At the hearing before the board it appeared that the appellee is the customs broker for the real importer, the Eagle Pencil Co.

The Government called no witnesses; the importer five. From the exhibits introduced and the testimony the following undisputed facts appear: These pieces of cedar in their imported condition have not been further manufactured than sawed. They are not planed, tongued, or grooved. They are sawed to the above dimensions for the purpose of making pencils and nothing else, and are used for that purpose. They are imported in bags, each bag containing a certain number of pieces designed to make a certain number of pencils. After importation they are planed and grooved. A piece of lead is inserted in the groove in one piece and another piece, planed and grooved, is placed on top of the first and glued to it. In this condi-

tion they are called pencil blocks. They are then sawed apart, shaped in a shaping machine, sandpapered, polished, stamped, and tops put on, resulting in the ordinary finished lead pencil. The reason why they are imported in the form mentioned was, in substance, stated by one witness and found by the board to be "to economize in freight and save importing a lot of lumber that could not be used in the making of pencils, and would ultimately become waste."

There are three entries involved in the case. The merchandise was invoiced as cedar slats. The collector and appraiser refer to it either as pencil slats, cedar slats, or cedar in the form of slats, further manufactured than sawed. The witnesses said, in substance, that it was commonly known as red cedar boards, pencil boards, pencil blocks, cedar boards, cedar slats and boards, some using one term, some another, and some using more than one.

The court below based its decision upon the case of *United States* v. *Gallagher & Ascher*, 12 Ct. Cust. Appls. 472, and importer here relies thereon. That case involved the above-mentioned paragraphs. The merchandise there was not fully described in our opinion, but from the record and opinion in the court below it appears that it consisted of two wedge-shaped pieces of wood, about 15 inches long, by $4\frac{1}{2}$ inches wide, $1\frac{1}{2}$ inches thick on one side and three-fourths of an inch on the other; one piece had two of its corners sawed off; neither was a perfect rectangle; one was partially planed and the other rough. They were used for making and repairing violins.

In our opinion in the case it was said that paragraph 1700 unmistakably provided for sawed boards, planks, deals, and other lumber; that those two pieces were lumber within the common and ordinary meaning of the term; and not being further manufactured than sawed, planed, tongued and grooved, we held that they were entitled to free entry.

It is difficult to distinguish between that case and the one at bar. There the small articles were held to be lumber. The difference in sizes between the ones here and those there would hardly justify the conclusion that these are not lumber. They have not been further manufactured than sawed, nor are they more specifically designed for a particular use than were the two pieces in that case.

The Government relies upon the case of *United States* v. *Swain & Boggs*, 12 Ct. Cust. Appls. 13. That case involved packages or bundles containing from 16 to 20 pieces of wood sawed into dimensions varying from 13 inches to 60 inches in length, from 1 to 3 inches in width, and from one-half to 1 inch in thickness. Each bundle contained the requisite number of pieces, cut to size and ready without any further processing, to make a crate in which to transport a brass bed. Some of the pieces had been planed on two sides, some on one,

and some not at all. The merchandise had been assessed as a manu-, facture of wood not specially provided for, and was claimed to be entitled to free entry under a provision therefor not different from the free-entry provision in the case at bar. We were of opinion, and held, that, in view of the fact that nothing remained to be done to such crates except to fasten them together (obviously it would be labor lost to do it until the beds were crated therein), there was nothing in the case to overcome the presumed correctness of the collector's classification.

The facts here readily distinguish the two cases. These pieces of cedar, to an observer not familiar with the manufacture of pencils, do not in any sense appear to be finished. There is nothing about them to suggest the use to which they may be applied. They are lumber within the rule of the *Gallagher & Ascher* case and have not been advanced in condition any further than, if as far as, the merchandise in that case and, certainly, have not been further manufactured than sawed, planed, tongued or grooved, because they have been sawed only.

The Government further urges that if the importation is not wood unmanufactured, it is a manufacture of wood not specially provided for, under paragraph 410 of the act, citing the *Swain & Boggs* case, *supra*, as authority therefor. To claim that an article is wood unmanufactured and if it is not, that it is a manufacture of wood, is a little inconsistent. The case cited does not sustain that contention, nor is it supported by the evidence in this case.

The applicability of paragraph 410 does not appear to have been suggested in the court below, as it is not referred to in its opinion.

The lumber in this case has been sawed only, and in view of the provisions of the various statutes referred to and the cases cited, we conclude that it is lumber not further manufactured than sawed, is within paragraph 1700, and therefore is entitled to free entry thereunder.

The judgment of the United States Customs Court is *affirmed.*